**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

THE SUDDATH COMPANIES; TOTAL MILITARY MANAGEMENT, INC.; NATIONAL HOLDING COMPANY, INC.,

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*,

and

HOMESAFE ALLIANCE, LLC,

*Defendant-Intervenor*.

**REDACTED VERSION**

Case Nos.: 24-1836, 24-2029, 24-2112

Judge Zachary N. Somers

[redacted]

**PLAINTIFFS' JOINT**
**MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Pursuant to Rule 7(b) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiffs Total Military Management, Inc. ("TMM"), and National Holding Company, Inc. ("National") (collectively, "Co-Plaintiffs"), through undersigned counsel, respectfully move this Court to order the supplementation of the Administration Record with materials necessary for effective judicial review. Pursuant to Rule 7.3(b), the undersigned certifies that we have in good faith conferred or attempted to confer with opposing counsel. Counsel for Defendant the United States and Defendant-Intervenor HomeSafe Alliance, LLC, ("HomeSafe") oppose this motion. Counsel for Consolidated Plaintiff The Suddath Companies ("Suddath") joins in this motion.

[redacted]

## I. INTRODUCTION

In this consolidated bid protest, multiple experienced moving companies challenge the U.S. Transportation Command's ("TRANSCOM") procurement actions surrounding its massive global household goods contract ("GHC"). By now, 2.5 years after contract performance began, the GHC should be the only game in town. Awardee HomeSafe should be handling every military move—around 33,000 per month worldwide. But within months of performance commencing in November 2022, TRANSCOM began relaxing its rigid requirements, culminating in a February 2024 modification that fundamentally eased the Solicitation's difficult Transition and Phase-In requirements. The contract became unrecognizable from TRANSCOM's ambitious procurement; prospective offerors would have never reasonably anticipated this cardinal change when submitting bids.

Nearly six months have passed since the Administrative Record was initially filed on December 16, 2024.[1] Since then, the parties filed cross-motions for judgment on the record and the Court held oral argument. The Department of Defense ("DoD"), however, has made its own moves that speak to the core issues in this protest.

As discussed below, [redacted] And just last week, the Secretary of Defense issued a highly unusual public memorandum decrying HomeSafe's performance "deficiencies," announcing significant potential "holistic" modifications to GHC

[1] The Government completed the AR on February 14, 2025.

[redacted]

and changes to DoD's procurement of household goods moving services, and warning that GHC might be terminated. Relatedly, DoD just announced it may reduce discretionary moves by 50%.

These extraordinary developments, announced at the highest levels—and the supporting documents that must exist to justify these actions—are directly relevant to core questions before this Court: has TRANSCOM modified GHC in a manner that offerors could not have reasonably anticipated? Is the additional time for transition and phase-in "material"? And on the balance of harms, has the Government suffered any injury when [redacted], the Secretary of Defense has thrown GHC as a whole into reverse and publicly threatened HomeSafe with termination, and DoD is now directing funding to alternative programs such as the incumbent Defense Personal Property Program ("DP3")?

None of this evidence is in front of the Court. Even at this late stage of the proceeding, because GHC continues to evolve, so too should the Administrative Record. Indeed, it would be manifestly unfair for the Defendant to deny that any cardinal change has taken place while at the same time publicly conceding, essentially, that the contract has materially changed in such a way that potential bidders could never have anticipated. Absent supplementation of the record to align with this reality, TRANSCOM will unfairly benefit from the legal fiction of a stale record. Effective judicial review demands that the Government supplement the record with relevant documents relating to its public and significant decisions.

We respectfully request that the Court order the Government to produce all materials related to the administration of and changes to GHC that have taken place since the Administrative Record was filed, including those specified herein, and allow the parties to move for supplemental briefing, if warranted, based on the information revealed in these materials.

[redacted]

## II. RELEVANT FACTUAL BACKGROUND

Co-Plaintiffs will not re-tread the facts already set forth in prior briefing.[2] At core, TRANSCOM awarded the GHC in November 2021, and performance began in earnest in November 2022. As solicited and awarded, HomeSafe was to complete rigorous transition activities during the first 9 months of performance and then complete phase-in over the subsequent 8 months.[3] By May 1, 2024, nearly every contracted military move was supposed to be coordinated by the GHC. But shortly after performance commenced, TRANSCOM had different plans. Over the next year, a series of contract modifications, that culminated with Modification 13, made sweeping changes to the time, funding, and conditions for performance such that HomeSafe had triple the amount of time to complete transition. And rather than a rigid, high-risk phase-in, HomeSafe enjoys a flexible "conditions-based phase-in approach" under which HomeSafe handles a fraction of the initially anticipated volume of shipments over an indefinite time period. As previously argued, this changed the risk allocation and erased the barriers to entry that limited offerors into the competition. Gone was the unforgiving schedule and requirement to rapidly climb the steep hill of performance within the Solicitation's specified timelines. And no offeror could have reasonably anticipated this magnitude of change, especially given the Solicitation's mandatory and unambiguous requirements.

TRANSCOM's administration of GHC continues to evolve as the parties litigate. ***First***, by late January 2025, TRANSCOM issued a show cause notice after HomeSafe missed pickups

---

[2] *See* ECF No. 43, Co-Plaintiffs' MJAR at 3–18; ECF No. 54.

[3] *See id.* at 24.

[redacted]

in moves affecting an estimated 1,000 military families.[4] TRANSCOM officials questioned HomeSafe's capacity, but stated that they had not "made any decisions on adjusting the schedule" then in place which called for "all moves within the continental U.S. to transition to the new contract starting in May, and to begin using it for international moves in September."[5] Several months later, TRANSCOM testified that it "remains committed to the relocation transformation and we will continue domestic market phase-in through the summer of 2025 May and begin the international transition in September 2025."[6]

***Second***, on February 28, 2025, HomeSafe reached an agreement with TRANSCOM under which HomeSafe would be allotted at least 21 days lead time to book any move.[7] This agreement is a departure from the status quo under the current DP3 program in which contractors are assigned and staff moves within hours, not days or weeks. Indeed, HomeSafe's public statement illustrates the wide latitude uniquely offered to the GHC contractor under the change to a "conditions-based phase-in approach."

***Third***, [redacted]

---

[4] *DoD raises formal performance concerns on multibillion dollar moving contract*, Federal News Network (Jan. 30, 2025), https://federalnewsnetwork.com/defense-news/2025/01/dod-raises-formal-performance-concerns-on-multibillion-dollar-moving-contract/.

[5] *Id.*

[6] *Statement of General Randall Reed, United States Air Force, Commander, United States Transportation Command*—Before the Senate Armed Services Committee on the State of the Command at 17 (Mar. 5, 2025), https://www.armed-services.senate.gov/imo/media/doc/general_reed_written_testimony.pdf.

[7] *I-Team Update: Military pulls back on relocation program,* WRDW News (Mar. 5, 2025), https://www.wrdw.com/2025/03/05/i-team-update-military-pulls-back-relocation-program/.

[8] [redacted]

[redacted]

***Fourth***, on April 30, 2025, HomeSafe returned to TRANSCOM 60% of the moves that had been booked under GHC, amounting to 5,731 returned shipments with dates extending through July. Following a meeting between HomeSafe and the service branches, the Army and Navy announced further changes. The Navy stated it would pause utilization of GHC for at least 30 days, while the Army and Air Force issued internal directives to cease registering all new orders through the GHC program.[10] In turn, legacy providers under the DP3 program—including Co-Plaintiffs—began receiving the orders that had been pulled back from GHC.[11]

***Fifth***, and most significantly, the Secretary of Defense issued a highly atypical public memorandum faulting HomeSafe for performance "deficiencies" while announcing further potential modifications to the GHC contract. In a memorandum dated May 20, 2025, titled "Immediate Modifications to the Defense Personal Property Program," Secretary Hegseth invoked the need to "restore trust in our military" and cited the "recent deficiencies in the

---

[9] *Id.*

[10] *See, e.g.*, Exh. 2, Army Personal Property Lead Element ("APPLE") Advisory A-25-008.

[11] Around the same time, Congressional oversight of TRANSCOM's management of GHC continued to escalate. Senators Mark Warner, Tim Kaine, and Michael Bennet issued a letter to TRANSCOM expressing concern regarding the "ongoing challenges with the contract transition and the large anticipated volume of moves in the coming months will continue to result in servicemember move disruptions and delays in their moves." Exh. 3, Letter from Senator Mark Warner, *et al.* to General Randall Reed (May 1, 2025), *available at* https://www.ttnews.com/articles/hegseth-moving-deficiencies.

[redacted]

performance of the [GHC]" to direct the Commander of TRANSCOM to "immediately" take actions to "support fully our military and civilian families during the 2025 [permanent change of station] season and beyond."[12] The memorandum proceeded to list six bulleted actions that TRANSCOM would take to hold GHC accountable while increasing the capacity and rates of non-GHC programs (in recognition of the fact that HomeSafe lacked the capacity to perform). Specifically with respect to GHC, TRANSCOM was directed to, among other things, "[r]eview, and if appropriate, implement Economic Price Adjustment provisions in the GHC contract."[13] Other DoD elements were instructed to form a task force and "must act decisively to improve, expand, terminate, or transfer GHC or [Tender of Service] responsibilities as needed."[14]

In a recorded video statement accompanying the memorandum, Secretary Hegseth described the peak moving season process as a "mess" that was "cratering" and "only getting worse" and acknowledged widespread concerns about "contractor performance, quality, and accountability."[15] Secretary Hegseth referenced "taking decisive action immediately" with multiple Secretary of Defense-level meetings taking place in recent weeks.[16] He also stated that DoD is going to "fix it holistically after peak moving season."[17] And a related news article

---

[12] Exh. 4, *Secretary of Defense Memorandum for Senior Pentagon Leadership* (May 20, 2025), *available at* https://media.defense.gov/2025/May/20/2003719625/-1/-1/1/MEMORANDUM-DIRECTING-IMMEDIATE-MODIFICATIONS-TO-THE-PERSONAL-PROPERTY-PROGRAM.PDF.

[13] *Id.*

[14] *Id.* at 2.

[15] SECDEF signs memorandum on changes to Military PCS process, Office of the Secretary of Defense Public Affairs (May 21, 2025), https://www.dvidshub.net/video/963521/secdef-signs-memorandum-changes-military-pcs-process.

[16] *See id.*

[17] *Id.*

[redacted]

released by DoD confirmed that the directive to TRANSCOM was intended to "change ***how the [GHC] contract is implemented*** in an effort to better serve military families."[18]

***Sixth***, DoD announced that it intends to fundamentally restructure military moves, including the need and frequency for permanent changes of station ("PCS"). In a memorandum dated May 22 but released May 28, 2025, the Under Secretary of Defense for Personnel and Readiness announced that DoD was developing an "actionable plan" to significantly reduce PCS "discretionary move" budgets up to 50% by FY 2030.[19] DoD also called for reducing overall PCS frequency and prioritizing "geographic stability" to decrease the "$5 billion [spent] annually moving military personnel and their families" and increasing efficiency, among other goals.[20]

## III. SUPPLEMENTATION

Supplementation of the administrative record is "limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotations omitted). Faced with a request to supplement the administrative record, the Court must "make the required threshold determination of whether additional evidence [is] necessary." *Id.* Supplementation is appropriate in instances in which the court can "explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether [the agency action] was

[18] *Hegseth Directs Changes to Address Shortfalls in Household Movement System*, DOD NEWS (May 22, 2025), https://www.defense.gov/News/News-Stories/Article/Article/4196075/hegseth-directs-changes-to-address-shortfalls-in-household-movement-system/.

[19] Exh. 5, Memorandum: Permanent Change of Station Targeted Reductions Review and Personnel Policy Changes (May 22, 2025), *available at* https://media.defense.gov/2025/May/28/2003725100/-1/-1/1/PERMANENT-CHANGE-OF-STATION-TARGETED-REDUCTIONS-REVIEW-AND-PERSONNEL-POLICY-CHANGES.PDF

[20] *Id.* at 1–2.

[redacted]

arbitrary and capricious." *Legacy Corp. of Illinois v. United States*, 174 Fed. Cl. 291, 307 (2024) (internal quotations omitted) (quoting *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018)). Put differently, record supplementation "is not prohibited and may be used when it is necessary for the Court to gain a complete understanding of the issues before it." *Sonoran Tech. & Pro. Servs., LLC v. United States*, 132 Fed. Cl. 644, 647 (2017).

## IV. ARGUMENT

Supplementation of the record is warranted and the additional documents are necessary for judicial review. The requested materials—and related information uniquely within the possession of the Government—directly address the core issues in this cardinal change protest. The materiality of the contract change is impacted by the length of time permitted for transition and phase-in, not to mention the degree of risk shifted from the contractor back to the Government. Indeed, the DoD's overarching household good moving requirements are dramatically shrinking as reflected by the May 22, 2025, Memorandum—a development that shrinks the mountain that offerors had to sprint up to bid on the GHC contract. And there must be no doubt of DoD's convictions to carry through on these monumental changes. It is highly unusual for the Secretary of Defense to direct specific changes to a contract in public memoranda, let alone reform an entire military doctrine based on a contractor's failures.

Whether these changed requirements were reasonably foreseeable to bidders at the time of the GHC solicitation is similarly informed by the degree of flexibility afforded to HomeSafe and the potential to reduce discretionary moves by as much as 50% over the next 5 years. No reasonable bidder could have anticipated the amount of additional time to perform; [redacted]; the possibility of increased funding, and the decreased move volume—all despite a public scathing memorandum

[redacted]

from the Secretary of Defense, abandonment of the program by the service branches, and Congressional oversight. At a minimum, these developments are relevant to weighing the injunctive factors including the balance of hardships and the public interest. Because DoD's most senior leadership admitted that GHC is so structurally broken that comprehensive change is necessary, there can be no harm in issuing a permanent injunction while DoD conducts a competition that fairly allows interested offerors to compete for the relaxed requirements.

To be certain, these developments are so significant that they would have been included in the Administrative Record had they occurred prior to when it was first issued. Allowing the Government to avoid supplementation merely because of the passage of time would encourage gamesmanship, impede the Court's ability to gain a "complete understanding of the issues before it," and permit TRANSCOM to hide behind a legal fiction and an outdated statement of facts.

For the above reasons, Co-Plaintiffs request that the Court direct the Government to supplement the record with the documents listed above and any related and additional materials bearing on TRANSCOM's modification of GHC since the Administrative Record was issued. Co-Plaintiffs acknowledge that this motion is atypical in that briefing has already been completed and the case is otherwise ripe for disposition. But this is an atypical cardinal change protest in which the change at issue is the relaxation of time permitted to perform the contract's Transition and Phase-In requirements. Viewed through this lens, an injustice would result were the Court not apprised of highly relevant real-world developments bearing on these facts—the time and manner with which GHC permits transition and phase-in and the total amount of moves needed over the life of the contract. Simply put, these materials are necessary for effective and fair judicial review. Co-Plaintiffs also request that the Court allow the parties to move for supplemental briefing, if warranted, based on further information revealed in these materials.

[redacted]

Dated: May 30, 2025

Respectfully submitted,

*Of Counsel*

Moshe B. Broder
Jennifer Eve Retener
Ginsey V. Kramarczyk
JENNER & BLOCK LLP

/s/ *Noah B. Bleicher*
Noah B. Bleicher (Counsel of Record)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6063
*nbleicher@jenner.com*

*Counsel for Total Military Management, Inc., and National Holding Company, Inc.*

*Of Counsel*

Shirin Afsous
Cassidy Kim
Yongho Lee
Olivia Bellini
GREENBERG TRAURIG LLP

/s/ *Jeffery M. Chiow*
Jeffery M. Chiow (Counsel of Record)
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
(202) 331-3149
*Jeff.chiow@gtlaw.com*

*Counsel for The Suddath Companies*

[redacted]